T.C. Memo. 2016-174

UNITED STATES TAX COURT

JAY D. SCHECHTER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26978-12.                    Filed September 19, 2016.

<u>Russell D. Stanaland</u>, for petitioner.

<u>Christopher J. Richmond</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, <u>Judge</u>:  The respondent (referred to here as the "IRS") issued

a notice of deficiency to the petitioner, Jay D. Schechter, for the 2008 tax year.  In

this notice, the IRS determined an income-tax deficiency of $329,882 and an

accuracy-related penalty under section 6662(a) of $65,976.  Unless otherwise

indicated, all section references are to the Internal Revenue Code of 1986, as

[*2] amended, in effect for the year at issue, 2008.  All dollar amounts are rounded to the nearest dollar.

Schechter timely filed a petition under section 6213(a) for redetermination of the deficiency and the penalty.[1]  We have jurisdiction under section 6214(a). The parties have resolved all but one of the issues in the case.  The only remaining issue is the deductibility for 2008 of a $450,000 payment made by Schechter's wholly-owned S corporation, Simba Cal, Inc.  We hold that the payment is not deductible.

## FINDINGS OF FACT

Some facts have been stipulated, and they are so found.

Simba Cal is an S corporation chartered under the laws of California.  In 2007 and 2008, Simba Cal's business involved the manufacture and sale of awards, medals, trophies, and promotional products.  Schechter was the sole shareholder and owner of Simba Cal and was also its president.  As its president, Schechter managed Simba Cal's entire business, including handling, designing,

---

[1]Schechter resided in California when he filed his petition.  Therefore, an appeal of our decision in this case would go to the U.S. Court of Appeals for the Ninth Circuit, see sec. 7482(b)(1), unless the parties designate the Court of Appeals for another circuit, see id. para. (2).

[*3] and selling products. Simba Cal continues to conduct the same business. Schechter continues to be its sole shareholder, owner, and president.

In 2007 William Alexander, whom Schechter referred to as his "pension guy", suggested that Simba Cal should involve itself in a purported welfare-benefit plan. Schechter agreed with Alexander's suggestion.

On December 31, 2007, Schechter signed a shareholder resolution authorizing the officers of Simba Cal to "make contributions to and fund benefits for certain employees through the SICKNESS, ACCIDENT & DISABILITY INDEMNITY TRUST 2007".

On December 31, 2007, Schechter signed an adoption agreement under which Simba Cal purported to adopt and agree to participate in the "Sickness, Accident & Disability Indemnity Trust 2007". The adoption agreement identified Schechter as the only Simba Cal employee covered by the trust.

On December 31, 2007, Schechter signed an agreement by Simba Cal to pay fees to Nova Benefit Plans, LLC, to administer the "Sickness, Accident & Disability Indemnity Trust 2007." The fees consisted of a $1,500 initial fee, a $750 annual fee, and a $2,500 termination fee. Wayne H. Bursey signed this agreement as the trustee of Nova Benefit Plans, LLC, on September 22, 2008.

**[*4]** On September 12, 2008, Schechter signed a form under which he elected to participate in the "Sickness, Accident & Disability Indemnity Trust 2007." On the form Schechter named Casey Schechter and Shannon Schechter as equal beneficiaries of any death benefit under the trust. Schechter signed the form both as president of Simba Cal and as the participating employee.

On September 12, 2008, Schechter wrote a $450,000 check on behalf of Simba Cal to the "Sickness Accidental & Disability Indemnity Trust 2007".

The parties have stipulated that Nova Benefit Plans, LLC, provided Schechter a 21-page document entitled "Sickness Accident Disability Indemnity Plan & Trust". The parties have stipulated that "a purported employee welfare benefit plan" was "purportedly established" by this 21-page document. The 21-page document has a signature line to be signed by "the Plan Sponsor, NOVA Benefit Plans, LLC". However, no signature appears on this line. The document states that it establishes a "Sickness Accident Disability Indemnity Trust"; that this trust is intended to comply with section 419A(f)(6); that the sponsor of the trust is Nova Benefit Plans, LLC; and that the trust is for the benefit of a group of employers who have signed adoption agreements to join the trust. The document states that all employees covered by the trust will be paid benefits in the event of death or disability.

**[*5]** Bursey applied for an insurance policy with National Western Life Insurance Company. National Western issued an insurance policy on Schechter's life that obligated it to pay a death benefit to Schechter's beneficiary in the event of his death. At least initially, Schechter's beneficiary was the "Sickness, Accident and Disability Indemnity Trust 2007", which was designated the owner of the policy. As the owner, it had the right to change the beneficiary. The record includes only the even-numbered pages of the National Western policy. Bursey paid a one-time premium of $427,500 on the policy.

On its amended S corporation return for the tax year 2008, Simba Cal claimed a $450,000 deduction for its $450,000 payment. On his amended individual return for the tax year 2008, Schechter claimed that this $450,000 deduction passed through to him as Simba Cal's 100% shareholder.

## OPINION

The amount of a deduction for a contribution by an employer to a welfare-benefit fund is regulated by sections 419 and 419A. A welfare-benefit fund is any fund which is part of a plan of an employer through which the employer provides welfare benefits to employees or their beneficiaries. Sec. 419(e). Under section 419(b), a deduction for a contribution to a welfare-benefit fund cannot exceed the welfare-benefit fund's qualified cost. However, the section 419(b) qualified-cost

[*6] limitation does not apply to a deduction for a contribution to a welfare-benefit fund that is part of a 10-or-more-employer plan. This 10-or-more-employer plan exception is found in section 419A(f)(6). The exception of section 419A(f)(6) does not apply to a plan which maintains experience-rating arrangements with respect to individual employers. See Booth v. Commissioner, 108 T.C. 524 (1997).

It is Schechter's position that Simba Cal's $450,000 payment was a contribution by an employer to a welfare-benefit fund that is part of a 10-or-more-employer plan which does not maintain experience-rating arrangements with respect to individual employers. Therefore, Schechter takes the position that under section 419A(f)(6) Simba Cal's deduction for the payment is not limited by section 419(b). Schechter concedes on brief that if Simba Cal's deduction were limited by section 419(b), then the fund's qualified cost for the year would be zero. Therefore, if the deduction is limited by section 419(b) to the fund's qualified cost, Schechter concedes that Simba Cal would not be entitled to any deduction.

The IRS contends that the $450,000 payment by Simba Cal was not made to a welfare-benefit fund but was instead a payment of employee compensation under a plan deferring compensation. See sec. 404(a); sec. 1.404(a)-1(a)(1), Income Tax

**[*7]** Regs. Section 404(a) regulates the amount of a deduction for payments of employee compensation under a plan of deferred compensation. The IRS argues that the amount of the deduction is zero under section 404(a). In the alternative, the IRS argues that, in the event the Court considers the payment to have been made to a welfare-benefit fund, the welfare-benefit fund is not part of a 10-or-more-employer plan which does not maintain experience-rating arrangements with respect to individual employers. More fundamentally, the IRS argues, the Court need not decide whether the $450,000 payment was made to a welfare-benefit fund or whether it was a payment of employee compensation under a plan of deferred compensation because the payment is not deductible as a business expense under section 162.[2]

We need not resolve all of the issues raised by the parties. Schechter's only argument that he is entitled to a deduction for 2008 for the $450,000 payment rests upon the premise that the payment was made to a welfare-benefit fund that is part of a 10-or-more-employer plan which does not maintain experience-rating

---

[2]Sec. 404(a), which regulates the deductibility of compensation under a plan deferring the receipt of employee compensation contributions, allows a deduction for such compensation, within dollar limits, only if the compensation would otherwise be deductible. Sec. 419(a), which regulates the deductibility of contributions by an employer to a welfare-benefit fund, allows a deduction for such contributions, within dollar limits, only if the contributions would otherwise be deductible.

**[*8]** arrangements with respect to individual employers. As explained below, we find that the payment was not to a fund that was part of a 10-or-more-employer plan which does not maintain experience-rating arrangements with respect to individual employers. Therefore Schechter is not entitled to the $450,000 deduction.

Our finding is supported by a preponderance of the evidence. Therefore it is not necessary to determine which party has the burden of proof. See Knudsen v. Commissioner, 131 T.C. 185, 189 (2008).

A 10-or-more-employer plan is defined by statute as a plan to which more than one employer contributes and to which no employer normally contributes more than 10% of the total contributions contributed under the plan by all employers. Sec. 419A(f)(6)(B). According to Schechter, the 21-page document "clearly establishes" that Simba Cal was involved with a 10-or-more-employer plan. The 21-page document on its face seems to involve a "plan". The document requires the "Employer" to contribute to a trust which the document itself purports to establish. It requires the "plan administrator" (which was Nova Benefit Plans, LLC) to distribute benefits to covered employees of the "Employer". It defines an "Employer" as each entity which adopts the trust by executing an adoption agreement. Section 4.08 of the 21-page document provides that the contributions

**[*9]** to the trust that are made by any one employer for a given year "shall not exceed" 10% of the total contributions made by all employers to the trust for that year. On the basis of this provision Schechter argues: "The SADI Plan document clearly establishes that at all times the SADI Plan must have more than ten participating employers, and that at no time can any participating employer contribute more than 10% of the annual contributions received."

In our view, however, the more significant provision of the 21-page document is a requirement that the plan administrator (Nova Benefit Plans, LLC) maintain records sufficient for the IRS or any participating employer to "readily verify" that the trust satisfies the requirements of section 419A(f)(6) and to make these records available to any participating employer for inspection or copying upon written request. It appears, therefore, that Simba Cal had the right to obtain records from Nova Benefit Plans, LLC, showing how many employers participated in the plan that handled Simba Cal's $450,000 payment. Thus, Schechter (Simba Cal's 100% shareholder) had access to the records of how many employers participated in the plan, and, despite having access to these records, Schechter introduced evidence of only one employer's involvement in the plan, Simba Cal's.

As for section 4.08 of the document, at most this provision imposes an obligation on someone (perhaps Nova Benefit Plans, LLC) to make sure that the

**[*10]** plan in question has at least 10 participating employers.  The mere fact that a party was required to do something does not mean that the party did it.  The question is not whether Nova Benefit Plans, LLC, was obligated to make sure there were 10 employers or more contributing to the plan but whether there actually were 10 employers or more contributing to the plan.  The natural source of evidence as to the number of employers in the plan is the records of Nova Benefit Plans, LLC, the plan administrator.  Schechter introduced none of these records.  He admitted that he knew of no other employers enrolled in the plan.  It appears that Schechter's dealings with Nova Benefit Plans, LLC, were handled by William Alexander.  Alexander did not testify.  Schechter did not explain Alexander's failure to testify, other than to make the following stipulation:  "On April 12, 2011, William Alexander was permanently enjoined by order of the United States District Court for the Central District of California from, among other things, '[m]arketing, preparing, selling, organizing or administering any welfare-benefit plan' and from '[p]roviding any advice or assistance regarding the tax treatment of pension plans or welfare-benefit plans.'"  Under these circumstances we cannot find that there were 10 or more employers contributing to the plan merely because the plan document said that Nova Benefits Plans, LLC, was obligated to keep 10 employers in the plan.  We find that Simba Cal was a

[*11] participating employer, as is evidenced by the presence in the trial record of an adoption agreement signed by Simba Cal. But the lack of an adoption agreement for any other employer causes us to conclude, on a preponderance of the evidence, that Simba Cal was the only employer in this plan.

Finally, section 419A(f)(6)(A) does not exempt a plan from the requirements of section 419(b) if the plan "maintains experience-rating arrangements with respect to individual employers." An experience-rating arrangement with respect to an employer includes an arrangement for any period for which the relationship of contributions under the plan to the benefits payable under the plan is or can be expected to be based, in whole or in part, on the benefits experience of that employer or one or more employees of that employer. Sec. 1.419A(f)(6)-1(b)(1), Income Tax Regs. The benefits experience of an employer or an employee is defined as the benefits paid with respect to the employer or employee. Id. para. (d)(2). The plan described in the 21-page document offered death benefits and disability benefits with respect to employees covered by the plan. On its face the 21-page document provides (in section 5.02) that the death benefit with respect to an employee is reduced by any disability benefits already paid with respect to the employee. Thus, the amount of the death benefit payable on Schechter's life depended on the benefits experience of

**[*12]** Schechter. The plan described in the 21-page document therefore "maintains experience-rating arrangements with respect to individual employers" within the meaning of section 419A(f)(6)(A).

The $450,000 payment was not made to a fund that was part of a 10-or-more-employer plan which does not maintain experience-rating arrangements with

[*13] respect to individual employers.[3]  We conclude that Simba Cal is not entitled to deduct its $450,000 payment.

---

[3]Incidentally, Schechter contends that a letter from attorney John Reid, dated April 18, 2005, to Nova Benefit Plans, LLC, demonstrates that the plan described in the 21-page document is a valid sec. 419A(f)(6) plan.  Schechter offered the letter into evidence, and it was admitted without objection.  Even though the letter is part of the record, we are not persuaded by it.  The letter states: "The Plan * * * does not allow for adjusting * * * the benefits for the Employees based * * * upon claims experience * * * peculiar to the individual Employer."  This statement contradicts section 5.02 of the 21-page document, which the letter does not even discuss.  Either Reid did not read the 21-page document when he wrote the letter, or his letter is a form letter that discusses some other plan or plans.  Reid's letter is also potentially significant because it seems to contain information about the number of employers involved in Simba Cal's plan.  The letter states that the plan sponsor, Nova Benefit Plans, LLC, "represents that the Plan has over 60 participating as of the date of this letter."  This alone does not persuade us that there were 60 employers in Simba Cal's plan.  We wonder how many plans Nova Benefits Plans, LLC, administered.  Perhaps Nova Benefit Plans, LLC, aggregated the employers in several plans in calculating that the number of employers was 60.  We also have questions about the role of Reid.  Who was his client?  Was it Schechter?  Was it Nova Benefit Plans, LLC?  Why did Reid choose to rely on the representations of Nova Benefit Plans, LLC, instead of reviewing its records?  These and other questions about the letter were left unanswered at the end of trial.  Schechter did not call Reid to testify.  Nor did he call anyone from Nova Benefit Plans, LLC, to testify.  Schechter did not introduce any records kept by either Reid or by Nova Benefits Plans, LLC.  Under these circumstances we find that Reid's letter lacks credibility, and we accord it little weight.  The letter does not alter our view that it is more likely than not that Simba Cal was the only employer in the relevant plan and that the relevant plan maintained experience-rating arrangements.

**[*14]** In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered under Tax Court Rule of Practice and Procedure 155</u>.